Thank you and good morning. May it please the court. Section 3730C2A is clear. When the government moves to dismiss, the relator is entitled to, quote, an opportunity for a hearing on the motion. Admittedly, when the district court ruled here, it didn't have the benefit of the Senate Finance Committee report, didn't have the benefit of intervening precedent. The text is the text. And the term hearing on the motion means a hearing at which evidence can be presented, argument can be presented. It does not mean briefing on the motion. When one hears that phrase, it doesn't mean hearing on the motion, doesn't mean briefing on the motion. And Congress didn't use an opportunity to be heard, which is the usual term of art for just having briefing or writing. And at least two courts, the Fifth Circuit in Health Choice and the Seventh Circuit in UCB, have recognized the one that says hearing on the motion. It means just that, hearing on the motion, standing up and staying in Counsel, looking at the text, it seems, to me at least, there's two textual questions. One is, what does hearing mean? And you've kind of talked about that at the start of your remarks. Is it something kind of like here, where you come into court for an event, there's a judge you get to talk to and maybe put up evidence? Or is it, you know, a process that can be decided on paper enough? I understand your point there. And assuming you're right there, the text also talks about the opportunity for. And it doesn't say, you know, there shall be a hearing. It says the opportunity for. And the Third Circuit has a case called Chang where it says, you know, the opportunity must be something that a party avails itself to. In other words, it must be requested. In other words, opportunity doesn't do any work. I didn't see that Doe requested a hearing. Your Honor, I think I point the court to JA140, which is the opposition to the motion to dismiss. And it says, quote, Relator is entitled to an evidentiary hearing. And it quotes the provision of the statute that provides the person with an opportunity for a hearing on the motion. We had sought a continuance, and the government had opposed the continuance on the ground that we're not entitled to a hearing. It said, hearing requirement is satisfied by allowing the Relator to submit a response on the motion. And we replied. This is page 254. Relator respectfully disagrees with the without an evidentiary hearing for our argument. Again, citing the statute. So it was very much put up before the District Court that we thought we were entitled to an in-person live hearing, and that we sought a continuance in order to have that hearing. So you agree that you must request it? You agree that the Relator's not, the court doesn't, the language doesn't require the court on its own to set a hearing that the Relator has an opportunity but must avail itself of that? So I'm not sure what our position would be on that, whether you have to request one or whether or not the court, and it's ordinary court, should provide a hearing and just schedule it on its own. It may depend on the court's own local rules and how it handles processes. But I do know here that there was a specific request that we said, you can't, we not, when the government opposed our continuance, we said, no, no, you can't do it on the paper, excuse me. You have to have a hearing. Our opposition to the motion dismissed said, we would like to present evidence and we're entitled to a hearing on the motion. So it couldn't have been passed on here that the court mistook that we were bypassing our opportunity for motion. This is a case where we forcefully and robustly demanded the hearing to which we thought the statute entitled us and which the Seventh Circuit has said to which the statute entitles you. And note that hearing is actually very important because it serves constitutional structural interests for multiple branches of government in addition to individual rights considerations. And it's this, I apologize, there's sort of four different points on this. But the first is that Congress has a very important role in FCA cases because it replicates the power of the purse. These are important public FISC issues when the government is going to terminate what is the relator's portion, its property right, and a cause of action and possibly terminate the government's right to recover money for the public FISC. And the Congress could understand that a hearing serves an important interest in having the government take that relief. And that's because, as we all know, there are sometimes differences between what you're willing to say in a brief, a position you might take in writing, and the position that you might take if you know that you're going to have to stand up in court and take that position. What do you do, counsel, with Pulaski's or Pulaski's dictate that Rule 41 is the standard by which a motion to dismiss is governed? And here we're talking about a pre-answer situation and a one under the rule. And Pulaski seems pretty clear that, you know, that's the standard we go by. And that rule says, you know, a court order isn't even required. So what are we all doing with this? I mean, if the rule is our standard, the Supreme Court tells us it is. I mean, in fairness, it says unless it refers back to a statute. But it still seems to suggest Rule 41 is telling us there's not much for our court to do here. And clearly, Rule 41 does say subject to an applicable federal statute. So it's not just automatic. And it's also that Rule 41, and we embrace Rule 41 here, Rule 41 doesn't exempt people, for example, from constitutional limitations. Rule 41 doesn't say the judiciary loses its interest, and that was my second point, in judicial integrity and making sure that the judicial process is not being used in a way that's inconsistent with the judicial rule. Rule 41 simply says, here's your ordinary rule. But if there's a constitutional issue, a separation of powers issue, or an individual rights issue, Rule 41 can't override that. And that is, as the Seventh Circuit pointed out, sort of the grist for these types of hearings. So, for example, if one example would be if a relator's suit were dismissed because the relator was from a different political party, the court obviously wouldn't have to say, Rule 41, you don't need an order. It's got a hearing. And it can have the opportunity to say, if that's what's going on, I can't put judicial imprimatur. I can't effectuate that constitutional violation by ordering dismissal. The Rule 41 hearing also ensures that judicial integrity, judicial integrity, to make sure that there's not some sort of pretext going on. What constitutional issue do you have here? Well, Your Honor, I think our primary one is a separation of powers issue. And that is the judicial rule. And that is, if there's pretext going on here, the judiciary has the right to know that the government's reasons are pretextual. And that implicates two things. One, that the government, the judiciary's processes, its power to dismiss the suit is not being misused. It's not being used for an improper purpose. And the judiciary always has an interest in the integrity of the judicial process. And second, there was a plea hearing here. And reaching back, the judiciary has a right to understand whether or not this is the dismissals being sought. It's being sought on the ground to try and hide, to obscure the fact that there was a prior fraud on the court, that the plea resulted from untruths being told to the government and being repeated to the court as part of the plea hearing. If that's the government's role, the judiciary has a right and it has a role in deciding whether or not dismissal is appropriate, and whether that is a valid reason for trying to dismiss a Fall Exam Act suit. So I think in this case, it's primarily a judicial integrity, but also remember, the relator here has a property interest in its cause of action, has an opportunity to be heard on why it's improper for it to be dismissed, whether constitutional separation of powers and Congress itself set forth a reason for the hearing entirely apart from any individual interest. And that is, it has a right, it is an interest in the public fist, and it has the right to require the government to stand up and take its position publicly before another branch before the judiciary says, yes, I will dismiss that suit. So turning to the importance here, the Senate Finance Committee report here does absolutely underscore the importance of the hearing in this case. Now, while the court doesn't have to reach the merits, I think the absence of the hearing that the statute requires itself alone is dispositive. The hearing here was incredibly important because there was a representation to the prior court at the sentencing, and there was a prior representation of the plea agreement that the conspiracy that was the subject of the prosecution had ended by 2009. And if you look at page 1011 of the Senate report, it says the conspiracy continued after the plea. So we're after 2014, that Credit Suisse employees knowingly and willfully, quote, facilitated a criminal tax conspiracy involving $220 million in undisclosed offshore assets. It's on page 10 to 11. And the conspiracy lasted from 2012 until after Credit Suisse's 2014 plea agreement. That type of potential misrepresentation to the government and ongoing fraud and the misrepresentation to the court is the type of thing that implicates judicial integrity. Can I ask a question about that? Because I'm wondering whether the type of stuff that is talked about after the plea hearing is something that is not just a matter of the court's conduct, but something that might violate the plea agreement. In other words, there can be conduct that violates the plea agreement and subjects the party that does so to bad things. But that's not necessarily the same as that there was a false representation for a reverse false claim act. And so I'm struggling with, I got no real problem that what you're talking about might be improper conduct, might violate the plea agreement, might have consequences. But given what was said, particularly the questions from the court that are relied on, I'm having more trouble how that leads to a reverse false claim act action. And I think the important point here is, and the district court didn't focus in on that, focused in on whether or not they came at a time when there was an obligation, and I can turn to that next. But the fact that there is a, and we agree, the fact that there is a breach of a plea agreement is not an improper or knowing effort to decrease the amount of things in particular that were false statements, falsities, that had the potential and lowered the amount of the obligation that resulted from the plea agreement. The first is that the plea agreement itself represented and incorporates the statement of facts by reference, and that's at page 61, I believe, of the appendix. It says that the conspiracy ran through 2009. But it turns out that's not true. That's a false representation. And if that were it, well, it's in the agreement before the obligation exists. We may not, we may have a problem on there being an existing obligation. But that was then repeated. After the obligation existed, you've signed the plea agreement, you now have a monetary penalty that's attached. You have conceded you're wrong, you've conceded you've committed a crime, you've conceded you're subject to a penalty. There's a monetary penalty attached to that. You now go into court and the court says, is everything, excuse me, is everything in that document true? Is this all truthful? And the response was yes. And so you've now And repeated it because you know that instead of paying $2.6 billion, if you hang onto this and don't tell the government anything that's going on, and you say, yes, we ended in 2009, you stick to $1.3 billion. And then it happens again. You're in district court at sentencing. So the plea's been accepted, you're now back at sentencing. And the district court has before it, it has its plea agreement. The district court has before it the statement of facts. And the district court goes through and starts going through the sentence factors. And it looks at counsel and counsel says, do you have anything to add? And the answer is no. When there's knowledge that, in fact, the conspiracy's been ongoing despite what it says in the plea agreement, despite what it says in the statement of facts. And that type of failure to convene, the failure to speak, can be a false statement when there's an obligation to speak. And when someone knows that there are documents before the court that are not the full truth and refuses to ante up to it, that is a false statement. And finally, and they ask specifically to the corporate representative, do you have anything to add? And again, the answer was no. And then finally, there was an obligation under the plea agreement to come forward with what we call the lever lists. People who are shifting their money out of Credit Suisse in order to avoid detection or have done that once the government announced its investigation. And again, those lists were not turned over. The Senate report pointed out that these things were going on, that the people were leaving and it wasn't being done. And that kind of hiding from the government when you have an obligation to speak is itself also a false claim. And the key point is, turning to the other issue, what the district court ruled on, which was these would not count unless there was an obligation to pay. There has to be an existing obligation. But the contract itself, the plea itself, says there's an obligation to pay. You are agreeing to do this. And the contract itself, and this is on page 69 of the appendix, actually says it's effective when signed. That obligation exists. And the ongoing fraud following the signing of the plea agreement is all the type of thing trying to be used in order to avoid the increase in payment that would occur if the truth had been told. And I see that I'm out of time. I thank you for your time and reserve anything else for rebuttal. Thank you, Mr. Lamkin. Ms. Marcus? Thank you, Your Honor. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent aptly the United States. This court should affirm the dismissal of Relator's action under Section 3730C2A without any need for remand and without any need for reaching the merits of whether Relator stated a claim. Relator has not shown either that the text of the False Claims Act generally requires an in-person hearing or that the circumstances of this case require an in-person hearing. And the Supreme Court's recent decision in Polanski confirms that affirmance of the district court is mandated here because this motion to dismiss was filed by the government pre-answer and pre-summary judgment. And as the courts already recognized, that means that the district court plays no adjudicatory role. That's now clear. At the time the district court issued its decision, Polanski hadn't been decided yet and there was a circuit split on the standard of review. So the district court here actually did reach the government's reasons. But the Supreme Court has now made it clear that absent some kind of constitutional violation of the Relator's rights, like equal protection or the type of substantive due process that would shock the conscience, like constitutional restraints on government conduct, there is no role for the judiciary to play. And that's consistent with the statute that's mandated by the Supreme Court. And so we submit that this court should just affirm the dismissal. What about the good cause aspect of it? You don't think the court has an obligation to, if there's an issue as it was here, the question about questioning your good cause for dismissing of Rule 41? Your Honor, respectfully, the Supreme Court said that at this stage of the proceedings, before the answer and before the summary judgment motion, this is because the United States is the real party in interest here and the Supreme Court said this is, the Relator is bringing a claim on behalf of the United States against the defendant. So the United States, as an ordinary plaintiff would be, would have the right to voluntarily dismiss its action before an answer or summary judgment motion just by providing a notice. Now, that is, of course, the statute here as the Supreme Court understood. Well, you first intervened, didn't you? Actually, not in this case, Your Honor. You didn't intervene? We didn't. This was, again, pre-Supreme Court decision and many of the courts of appeals had taken the position that the government didn't need to intervene and some said it did. The Supreme Court now has made clear that the government needs to intervene. However, in Polanski itself, the government didn't intervene first and the Third Circuit construed the motion to dismiss as a motion to intervene and dismiss and the Seventh Circuit did the same thing in UCB and the Supreme Court. But counsel, let's talk about that. I mean, true, in Polanski, the Third Circuit had done that, but the Supreme Court doesn't, in its analysis, say that's the rule. Why else would they have said you have to intervene? Your argument almost suggests that any time there's a motion to dismiss, courts can say, well, we ought to construe that as a motion to intervene. I mean, I get that that's what happened in the Third Circuit. I get some other courts, but it's kind of hard to square that, I would say, with Polanski's reasoning requiring a motion to intervene, particularly here when, is it two days before, you declined to intervene. Well, Your Honor, just as in Polanski and in the Seventh Circuit case where the Seventh Circuit did the same thing, the United States understanding at that time was that we didn't need to intervene and this case is therefore in the same procedural posture also because Relator here isn't challenging this before this court. The Supreme Court has a footnote in Polanski noting that Polanski before the Supreme Court didn't challenge that and we're in the same procedural posture going forward, the government, and we've done this in future cases. Post-Polanski, we file a motion to intervene and dismiss. It's one motion. And as a practical matter, if we were to say, well, you didn't intervene and reverse on that basis, you just file a motion to intervene and we're right back here. We don't accomplish a whole lot. But what you just said seems to me important, that you acknowledge post-Polanski, there must be a formal motion to intervene. We do, but we also submit that the motion to the government's wanting to dismiss the case is itself good cause to intervene and depending on the procedural posture of this case, there should not be any judicial review of the government's reasons for dismissal, again, absent some kind of honorable showing of a constitutional violation. He says his constitutional right is being violated in separation of powers, which I guess is an invitation for us to decide this case on the merits, which I don't think we have to do, but what is that? Again, Your Honor, this is a statute where a relator is bringing a claim on behalf of the United States and it is in the False Claims Act is structured to give the United States this power to move to dismiss under 3730C2A over the relator's objections. The Supreme Court has held that before an answer or summary judgment motion, that there is no adjudicatory role for the court to play and that makes sense if you're looking at this as being essentially the United States' claim and it's sort of a, the United States had actually the record, though we didn't need to do it after Polanski, the record shows and I think all of the merits types argument that the relator is making demonstrate, you know, why there would be good reason not to go forward with So counsel, just play this out. Assume hearing doesn't, can't, it's not enough to satisfy hearing, that's different than opportunity to be heard, so deciding on the papers isn't a hearing. And assume the relator has an opportunity to hearing and has availed itself and said I want a hearing. The government, based on your argument, which I think makes some sense under Polanski, there's, in a pre-answer situation, there's no adjudicatory role. Does that nullify the right to a hearing or does that mean you have a hearing and it's pointless? No, your honor, it's not, and it doesn't nullify the right to the hearing if you interpret it as we do as encompassing a hearing on the pleadings because the notice provision gives the relator the opportunity to file a response to the motion and in doing so, the relator can try to persuade the government to change its mind. But what if my question assumed, maybe I didn't say this clearly, I must assume hypothetically that's not right, that we were to decide you're basically equating opportunity for a hearing with an opportunity to be heard and Congress used different language. Opportunity for a hearing means an in-court event where lawyers argue and evidence may or may not be presented. Assume that's what hearing means. Then do we get in a situation that's kind of pointless where we have a hearing but there's no adjudicatory role in a pre-answer situation? Yes, you would certainly, that would be the case here and that's one reason you wouldn't construe hearing that way because we see that the relator has not made a tolerable constitutional claim. It wouldn't be pointless in every case because the notice and opportunity for a hearing provision does give the relator the chance to make that tolerable showing. He just has not done so here. He hasn't alleged any violation of his constitutional rights. So, it's more and the types of allegations he's making are speculative and they involve prosecutorial discretion, decision-making, privilege communications, ongoing implementation of a plea agreement, that I mean this really would not be an appropriate subject for a hearing and in this case it would indeed be pointless to have an in-person hearing. In a key term setting then based on your argument you would never have a constitutional violation because it's always the And again there's no evidence of any of this here but as the Supreme Court suggested and the Third Circuit also did in Polanski, if a relator showed for example an equal protection violation by the government and if the relator actually had evidence that the government was dismissing the case because of the relator's sex or race, for example, like that would be the kind of thing if the relator actually had proof of that or the substantive due process is something that would shock the conscience. It's a very high standard of constraints on government. So, you know basically you think the United States government doesn't have to have a reason at all, really? You can just say rule 41 get away, right? The government has the discretion to decide when it's in its best interests for a false claims act case on its behalf. And like I said it's unbridled discretion, right? You don't want to do it, right? Essentially at the rule at the pre-answer pre-summary judgment stage absent a constitutional issue. But doesn't that sort of, does that undermine, because we act by Congress, right, law, but Congress wanted people to be able to bring these things. It kind of amazes me, not this case necessarily, while somebody supposedly did something and there's money owed and the government won't pursue them but then when someone else wants to pursue them in a key We don't want to pursue it to get the taxpayers money back and we won't do it, it won't let you do it. There's something wrong with that in terms of congressional intent. Well, your honor, I will say that the government does give reasons when it moves to dismiss as it did. I've had a lot of these key time cases and it amazes me the government come in and fights them. I mean like no you're not a relator. We knew all along they had money like that we it's owned to the taxpayers. We don't want to get it and we don't want you to get it. The government also allows many, many, many of these actions to go forward. It does, it's fairness to you, it does. But the ones, but when you decide which ones you do and that's what they're raising, I mean I guess they're saying that there's something amiss here that you don't want to correct a mistake that was alleged to a federal court and a sentencing. I'm alleged that you didn't want to do that and say look don't you want to know that the conspiracy continued and therefore this would give you another level and make double what the fine was. I mean that's what they're alleging. So you're saying you don't, you have the right just to say I don't care what was represented in the court that influenced the sentencing level, I don't want to hear it. Period, right? You think that that's unbridled discretion. Our position is the False Claims Act action is not the proper forum for those kind of concerns to be raised. We're not saying that there is an ongoing obligation on Credit Suisse's behalf which the Senate report that counsel referenced, it refers to and said the government is pledging to ongoing, you know, investigation of this. This is still being implemented, there's still file of indictment at Credit Suisse. There's a plea agreement. This is not our, within the False Claims Act, the government can decide that it's not in its best interest to go forward with a case when there are issues like interfering with a criminal action or and the government can, as we noted, we think the court should not reach the merits. What are they alleging now was your motive? What's the allegation of your motive here? The allegation of the other side for your motive. The allegation is... What's your motive was? Alleged. Alleged, yes. I'm not asking you to confess anything. I'm just saying what was the allegation here as to your motive for doing this? Is to avoid investigation of an alleged omission by the prosecution to the sentencing court. But I, you know, this is based on one line which says I don't have any further information to add at this time. A little broader than that in terms of not seeking to to prosecute them to the fullest extent that you could have. Yeah, and that they're back, okay. It's more than just that one little piece of representation. Not wanting to this defendant prosecute them to the fullest extent you could. That's my... That's the allegation of, you know, of course you don't, you disagree with that. I understand. I'm just trying to get to where can the courts have some way to enforce perhaps or look at a congressional intent in situations like this. But if your position is it doesn't matter, you have complete discretion to do it. We're just following what the Supreme Court said in Polanski, which is that the federal rules and civil procedure apply in the False Claims Act context. And that the government has a right to dismiss its own action. And counsel follow, I mean, but pre-Polanski, wasn't there a split in the circuit courts where some courts said there was, as Judge Gregory talks about, there's no discretion at all. The government has unfettered right to dismiss. And I forget what circuits they were. Yeah, and then the Ninth Circuit said, well, there's this good calls test. And, you know, which is maybe a more elusive or more flexible standard. And Polanski comes in and says, we're not going with any one of those. We're going with the federal rules. And so that's how we, I guess, now have to interpret it. And the federal rules, at least pre-answer, don't give the court much of a role, even if there might be curious. I mean, I think Judge Gregory has some interesting questions and there may be some issues there. But aren't we restricted based on the court not following the Ninth Circuit's good call standard to apply 41 unless there's something in the statute that tells us we can't? Yes, Your Honor. Thank you. That's exactly right. And this is what the Supreme Court held. So these cases, have they come up before? Again, it should be just dismissed because of lack of jurisdiction almost, isn't it? Based on the plans that they're reading, we don't have jurisdiction. It's not that you don't have jurisdiction, Your Honor, but... It's normally the power to do what? Yeah, that's right. I mean, I think it could be summarily affirmed if the relator doesn't offer a colorable showing of a constitutional violation. That's what the court's left open, and that's all. And if this court doesn't do it, what would be left would be the mandamus, but not really jurisdiction to handle the merits, right? Well, I think you still have jurisdiction on the ordinary appeal of a grant of a motion to dismiss. I don't see how you could, but nothing we could do other than have a mandamus against the district court. Well, in this case, Your Honor, we think that there is no need to do anything but affirm the district court's decision dismissing the relator's claim. And I see, I'm sorry, I've gone over my time, and I want to allow counsel for credits. We certainly aren't going to allow counsel. No, we're not going to allow counsel. Sure. Mr. Qualabong has another question. I'm sorry to prolong your time up there. I hope I'm not making it too uncomfortable. But let's assume we were to decide the text of this kind of, like I mentioned earlier, the text does, if requested, require a hearing. But there's not a constitutional-type claim that the Supreme Court seems to at least mention might be the role for a court to play. Is there any sort of prejudice or harmless error analysis that we would apply to not granting a hearing that is going to turn out to be pointless? Yes, taking Your Honor's assumption, yes. I think here, and here would be a case that it would be harmless error, because a remand for an in-person hearing would be pointless. Because a relator had the full opportunity to brief why a hearing was needed and has not on appeal made any colorful showing of a constitutional violation of his rights, then yes, I think, even if you made that assumption, which of course we disagree with, it would be harmless in this case. Thank you. Thank you. Thank you, Ms. Marcus. Mr. Owen. Thank you, Judge Gregory. It may please the Court. Matthew Owen on behalf of Eppley Credit Suisse. I'd like to begin with Judge Qualabong's last question to counsel for the government, which is about harmless error, because there are at least three other reasons besides the futility of holding a hearing on the government's motion that a remand would be pointless in this case, because the court can, in any case, affirm a judgment on any basis supported by the record. And in this case, the complaint that Mr. Lampkin would like the district court to hold further proceedings on to inquire into large constitutional separation powers questions is indisputably untimely, does not allege the required obligation or established duty to pay at the time of any false statement, and in fact, does not actually allege any false statement. It does not contain any of the statements Mr. Lampkin referred to this morning. For all of those reasons, if the court wishes to avoid wading into the niceties of Rule XIII, and there would be no reason at all to wade into those issues in this case, and many reasons not to. Now, tell us how we write this opinion you're telling us. Go ahead. I'd be happy to. Well, you did. That's what you offered. Of course. Of course. Tell us. Tell us how we write it. The first is that, to give you an example, this court's opinion in Robertson v. Anderson Mill Elementary School from last year affirms the power of district courts to sua sponte dismiss complaints under Rule XII v. VI if they fail to state a claim. And in that case, actually, this court held that the district court failed to give the plaintiff adequate process before it did so, even the minimal opportunity to be heard that that sua sponte dismissals require. But nevertheless, it affirmed anyway, because there was no prejudice to the plaintiff, because there was nothing he could possibly have said to resuscitate his complaint. Here, that is true for three reasons. First of all, it is undisputed that this complaint was filed more than six years after the facts that it alleges gave rise to the claim, which exceeds the statute of limitations, and more than three years after the complaint affirmatively pleads that the Justice Department knew all of the relevant facts underlying the with counsel for the government, because Relater says that he told them all of those facts. So he cannot take account and take advantage of the discovery rule. If you read Relater's reply brief in this case, he has exactly two arguments against that position, two defenses of timeliness, and neither of them make any sense. The first is he says that in Credit Suisse's underlying plea agreement, it waived the statute of limitations, citing JA 70. If you turn to that page in the paragraph 12B of the plea agreement, what it says is that Credit Suisse is waiving the statute of limitations for any federal criminal prosecution for a federal criminal violation. This lawsuit brought by Relater is not a federal criminal prosecution, so the waiver doesn't apply. The second reason that they give in defense of timeliness is that the timeliness should be judged from when Judge Smith knows the underlying facts related to the misconduct that Relater alleges took place. That's not what the statute governing the statute of limitations says, that's 3731, and it says three years from the time that the official of the United States charged with responsibility to act in the circumstances, after reference to the right of action that they would bring, knows or should have known the relevant facts. That's the Justice of the United States. They're the only institution of the government that could possibly pursue a criminal fine in the amount that Relater thinks that it should have pursued and gotten the district court to order. So because those two defenses against timeliness have no merit, and because the complaint, and they cannot be cured because of the affirmative pleading of the plaintiff, there is no reason to remand the case for further proceedings. The second reason is that the district court's holding is correct that the False Claims Act reverse false claims provision requires an obligation to pay the government, an established duty to pay. The only source of Credit Suisse's established obligation to pay a criminal fine is the judgment of the district court. An 11C1C plea, which is a little more rare than a B plea, but that's what this was, a C plea, all it does by its terms is obligate Credit Suisse to tender a guilty plea to the district judge, and if the district judge accepts it and imposes the precise sentence the parties have agreed on, it has to plead guilty. But if the district judge had said at the hearing, you know what, I don't think that this sentence is appropriate, I want to impose the $2.6 billion fine Relater now thinks it should have done, Credit Suisse would have an absolute right under the terms of the plea agreement and the Constitution to withdraw its guilty plea, go to trial, and maybe even be acquitted, then it would pay nothing. So because we know that to be true, and every circuit to have addressed this question has said so, and the district court already told this court how it is going to rule on that question because it said so in its opinion, even if you remand for a hearing on the government's motion to dismiss, Judge Hilton does not have to hold one because he could sui sponte, or in response to a 12-12 motion by Credit Suisse, dismiss the complaint anyway without the 3730 hearing. Because that process, remanding for the district court to spend time Counsel, when you say under the, I want to track what you say, you don't have to have a hearing, and you cited I think the Anderson It's Robertson versus Anderson-Mill It was, was that a false claim act case? No, it was, in fact, it was even worse. It was a constitutional claim. Well, I'd say it's even worse, but I mean, the argument would be, true enough, the federal rules don't obligate a court to have a hearing. I think, I don't think there'd be any argument that courts can sui sponte do a lot of things, you know, even before papers are filed and things like that. But here, here we have a statute that says an opportunity for a hearing. So, you know, I don't think that case, you know, would necessarily say that if the false claim act requires a hearing, you got to have a hearing. Now, we have a weird situation here where you might have to have a hearing where it feels pointless, depending on your perspective, our perspective on the arguments, potentially it's pointless. But, but, but so I, so I questioned the, you know, how that case really applies, given that we have statutory language that is subject to debate. Judge Quattlebaum, I have three brief responses to that. And Judge Gregory, with your indulgence, I'd like to address the false statements as well. Judge Quattlebaum, there's, there's three points I'd make to you. First of all, there's no exception in, for 3730 to the harmless error standard, right? I think your own opinion last year, and I can never know how to pronounce it, Snowboyan versus Curtis, is... We can't pronounce it. It says, you know, that errors are harmless if they, unless they substantially sway the judgment. And in this case, the district court said explicitly in its opinion, or over two pages, that the complaint fails to state a claim. That's not a discretionary basis. That's mandatory. If a complaint fails to state a claim, it has to be dismissed, right? So you know that if the harmless error test applies to this kind of procedural error, and there's no reason why it wouldn't. District courts commit procedural errors all the time, not holding this kind of process, not giving this kind of hearing. And the Court of Appeals can write an opinion that says, if you want to. Actually, we think that an opportunity for hearing means a live in-person hearing. But in this case, the error was harmless. And that, that test, the harmless error test, there's no exception from it in this case. And straightforwardly applying it either on the statute of limitations or on the Judge Hilton's opinion that it doesn't state a claim because of the lack of established duty is correct. The second is the related but different argument that any judgment can be affirmed on a basis supported by the record is indifferent to, and maybe this is a more direct answer to your question, is indifferent to what kind of motion might have produced that judgment. So for example, Judge Gregory, your opinion for the court in the Dean case, cited at page 52 of our brief, is about the district courts granting of a Rule 12 motion. And the court thought, no, it shouldn't have done that. But the judgment can be affirmed because a Rule 56 motion would be granted. And therefore, it doesn't matter what the reason for the judgment. The courts, as the Supreme Court said in Herb versus Pitcairn appellate courts, revise wrong judgments not to review opinions. So that's the other reason. We know that courts can affirm judgments on any basis supported by the record. And as I say here, there are three. And then the third reason is that Mr. Lampkin, I think, is respectfully mistaken about his ability to point to any false statements alleged in the complaint. There are only two paragraphs of the complaint that purport to say what the false statements were. There's paragraph 15, which describes the plea agreement, and paragraph 18, which describes the plea colloquy. Do you have anything else to add before sentencing? Answer, no. I think we can take it from Lader's reply brief. And my friend's presentation this morning, that not even they really think that was adequate. They want to go talk about the statement of facts underlying the plea agreement. And here I would point the court to very specific language. It's at JA 89 and 90. It's paragraphs 59 and 60 of the statement of facts. The gist of Lader's argument is that if you could construe the complaint and refer to the statement of facts, you would think it means that all criminal conduct had stopped in the year 2009. But paragraph 59 says is that in 2009, Credit Suisse undertook a flawed process of correcting these errors. And then in paragraph 60, it explicitly says that going forward from then, Credit Suisse managers improperly continued to assist U.S. taxpayers in opening these accounts, precisely the way that Mr. Lader alleges in paragraph 25 of his complaint was true of Mr. Horstee. So if you compared paragraph 25 of the complaint with paragraph 60 of the statement of facts at JA 90, you would be in a position to discover that they're very close to the same thing. So therefore, the complaint doesn't allege a false statement. The reply briefs statements aren't in, that it alleges that Mr. Lampkin discussed this morning, aren't either in the complaint, nor when you read the document as a whole, inconsistent with what the plea agreement actually says, which is that Credit Suisse will undertake in the future to remediate these problems, will close these accounts, will identify them for the government, and will implement procedures to ensure that its employees stop doing the stuff basically that paragraph 60 describes. So for any of those reasons, pick any or all, either harmless error or under affirming the judgment on another basis, the court can affirm. And the last point I would make is their brief, at the very, in their opening brief, does not contest the proposition that this court could affirm on the ground that Judge Hilton was correct that the complaint doesn't fail to state a claim. What their brief says is that you shouldn't do that, that you should reach this hearing requirement, send it back. And what I would tell your honor is that I think that prolonging this litigation, when you know for sure what the district court thinks about the merits of the complaint, and you know that Rule 12 requires him to dismiss the complaint, if he thinks that, then sending it right back up here in another year for your honors to decide the same question presented on established duty, or false statements, or the statute of limitations that you could decide right now would not be a good use of the district court's time or the party's resources. For those reasons, unless the court has further questions, we would urge that the judgment should be affirmed. Thank you, Mr. Owen. Mr. Lamkin. Thank you, your honor. I'd like to start out with the government's position that a hearing doesn't mean an in-person hearing because the judiciary quote has no adjudicatory role. I think that proves just way too much. If that were the rule, then there'd be no reason for what the government calls a paper hearing, for briefing. Rule 41 means there is some role for the courts. And that's especially true, I think, as was pointed out, where the government hasn't actually intervened. There's a standard there. The government has to show good cause. And good cause is absent, even if you say they constructively intervened by moving to dismiss. Good cause is absent if the government doesn't have good grounds, good motive, good purposes. But good cause is the standard to intervene, not to dismiss. So you can't, I mean, isn't their interest, isn't the fact that it's their interest that the case is being brought in their name, almost by definition sufficient cause to intervene. And then you have to deal with the question about whether there's some standard or some role for the courts in the actual dismissal. So if the government's motive is not good faith, that the government's motive is to effect a constitutional violation, if the government's motive for intervention is not your typical government's interest, I don't think good cause would be met. But even apart from that, once you get to Rule 41, the Rule 41 hearing, there is a role for the courts. Rule 41 doesn't say that the government, we are exempting the United States of America when it moves to dismiss from constitutional constraints. Can't say that. It's just a rule of procedure. Rules Enabling Act wouldn't allow that to happen. It doesn't say the judiciary must dismiss in the event of a constitutional violation. And it also doesn't say Congress made a mistake when it said that there's going to be a hearing. Congress understood that there was an important role to that live in-person hearing because what you're willing to stand up and push as your position in court very often may be different from what you might do just on your paper hearings. And Congress, with its important interest in the public fisc, required there to be a hearing. And here there was no hearing. Well, I may have misunderstood this, but taking paragraph 60 of the plea agreement, does not the Swiss crowd have a continuing obligation to correct the conduct upon which they pled guilty? I mean, why doesn't that satisfy any claim of improper motive? Well, I think the issue of improper motive for the government is one, to obscure that what the Senate report found was that the government was effectively catnapping on this. And another reason would be to obscure the fact that when the plea was taken, when the facts were presented to the judiciary for a plea, that that was knowingly false, at least on the Credit Suisse's side. If that's the motive for intervening, that's not good cause. If that's the motive for dismissal, I don't think it's consistent with the judicial role to have to accept that dismissal. The judiciary has a role, and Rule 41 doesn't take it away, ensuring that its processes are not used for improper purposes. But I should be very clear, the rule of the hearing, in some cases, will simply be to mean that the government takes its obligation to think its decision through very seriously, because it knows it's going to have to stand up in court and take that position. And finally, I'm going to turn too quickly to the harmlessness arguments. I did not see a harmlessness argument in the briefs. I don't think harmless is properly before the court. It has been waived. But even if we're going to talk about harmlessness, start with the timeliness issue that's raised by Credit Suisse. Timeliness is an affirmative defense. It was not raised below. This court ordinarily won't address issues that weren't raised below. And even if you were to look at it,  and it has to be that we would be unable to amend, because on a 12b-6, before answer, we would have an absolute right to amend our pleadings at least once, something that we weren't given. So you can't really affirm and say, well, a 12b-6 would have been granted, because that would have been with leave to amend. And in addition, 3731b, which is your statute of limitations and provision, allows up to 10 years if an official of the United States, the responsible one, not the relator, official of the United States, learned material facts in the three years before the complaint. And the Senate report reports ongoing conduct up to 2023, and it reports actions in 2014, August of 2014, particularly emails that the government may not have been aware of at that point in time. So we still have facts coming out even into 2023. I don't think you can say, we're going to affirm an alternative ground of untimeliness given those facts and given the fact that we would have an absolute right to amend and fix any such problem. Attorney, can I ask just one thing? I want to make sure I'm... There's been discussion of what the court's role might be in discussion about an equal protection, maybe exception or a substantive process exception. Sounds like you're not suggesting that's what you have here. It sounds like what you would say is there's more. There's a role for the court to make sure, you know, it's not the judicial process is not used for some improper means. I think the Seventh Circuit's UCB decision and the Justice Department's position before the court in UCB makes that clear that they call it sort of, they say fraud on the court, which I think is a little bit of an ugly term. But I think making sure the court's own integrity of its processes are not used or misused or brought to effectuate improper conduct. I think that has always been something that's within the judiciary's role. And Rule 41 doesn't say there's an exemption to that. You know, we're going to take away the judiciary's ability to police how its powers are being used by private parties, much less the government, which is subject to constitutional constraints on its conduct from due process, equal protection, and other grounds. And finally, turning to the plea agreement. I think if I understand this, with Credit Suisse's argument of the plea agreement, it's that there was no obligation until the court accepted it because it was a conditional plea. But that's not our argument. Our argument is that the plea agreement itself, which says it's effective right away, imposes an obligation. The sentencing court merely sets the amount of obligation. And the statute is very clear that obligation can be established whether or not fixed. It's the amount doesn't matter. And when the issue gets to the court, there is, at that point in time, that sentencing and obligation in place. The plea established it. For 371, there has to be either, incarceration or a penalty. And for a corporation, you can't have incarceration. So there was going to be a penalty. And the only question is amount. And if the plea, the false statements, if the hiding of the misconduct had not occurred, the court would have been with its rights to say, I'm not going to accept this amount. I'm going to go to another amount. But that doesn't mean that there wasn't actually, at the time, other false statements and obligation. Because under the rules, this is 11C1C, or excuse me, 11C5B. At that point where the court's going to say, I'm going to change the sentence. At that point, the court has to, quote, give an opportunity to withdraw. So at the point when the false statements are made, there is an obligation. It might go away later on. But that obligation exists. It would be like saying, a tenant who has a right to terminate his lease isn't subject to an obligation because he might terminate it in the future. No, there's an existing obligation when the lease exists. The fact that it's potentially subject to termination doesn't mean there's an existing obligation. If there's, and the government would have the right, and this is Rule 12B, excuse me, Provision 12, if there's a breach of the plea, if there's continuing misconduct, the government is released from the plea. But credit suisse is not. It's very clear credit suisse isn't allowed to withdraw its plea if it, just because it's breached its plea and the government wants out as a result. If there are no further questions, I thank the court for its indulgence. And I appreciate your time. Thank you, Mr. Lemkin and counsel for your representative presentation. We'll come down, great counsel, and proceed to our last case for the morning.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Henry F. Floyd